## Charles MILAM, II *v.* MIDLAND CORPORATION and THEIS REALTY, INC.

83-232                                    665 S.W.2d 284

### Supreme Court of Arkansas
### Opinion delivered March 12, 1984

*The McMath Law Firm,* by: *Sandy S. McMath,* for appellant.

16

Anderson & Kilpatrick, by: *Overton S. Anderson,* for appellees.

GEORGE ROSE SMITH, Justice. This is a suit by Charles Milam, II, for personal injuries sustained when his motorcycle was struck almost head-on by a car being driven by the principal defendant, Fred Borchert. The accident occurred on a curve in Mulberry Street, a residential street in Pine Bluff. The appellees, two real estate companies, were joined as defendants upon an allegation that they owned and managed the abutting land and had allowed visibility along the street to be obstructed by the growth of weeds next to the pavement. When it was found that the city was responsible for the weeds, the complaint was amended to assert that the real estate companies, in developing the subdivision, had made Mulberry Street too narrow and the curve in question too sharp. Recovery was sought on the theory that the defendants were strictly liable for having supplied a defective product and also were liable for their negligence in constructing a dangerous street.

These appellees filed a motion for summary judgment, which was submitted on various depositions. In appealing from a summary judgment for the appellees, the appellant argues the same theories asserted below: strict liability and negligence. Neither argument is supported by the law.

First, strict liability. Four years before this accident Mulberry Street was designed with the city's approval, constructed and dedicated by the appellees, and accepted by the public authorities. Under our statute strict liability may be imposed upon "a supplier of a product" if the supplier "is engaged in the business of manufacturing, assembling, selling, leasing or otherwise distributing such product." Ark. Stat. Ann. § 85-2-318.2 (Supp. 1983).

The appellant relies upon *Blagg* v. *Fred Hunt Co.,* 272 Ark. 185, 612 S.W.2d 321 (1981), where we adhered to our view that the builder-vendor of a house impliedly warrants its habitability and went on to hold that he is also the supplier of a product and therefore strictly liable for a defective carpet in the house. The language of the statute, however, cannot

conceivably be stretched to encompass a street as a product. The developer of a residential subdivision is obviously not engaged in the business of manufacturing, assembling, selling, leasing, or distributing streets.

Second, negligence. There are two fatal flaws in the appellant's theory of common-law liability. In the first place, a highway contractor who constructs a street is not ordinarily liable after its acceptance by the public authorities. The appellant, however, relies upon an exception that is recognized when the construction is "imminently dangerous." *Reynolds* v. *Manley,* 223 Ark. 314, 265 S.W.2d 714 (1954). "Imminent" is commonly defined as threatening to occur immediately, likely to happen at any moment. It cannot fairly be said that a four-year-old residential street, similar to thousands of others in Arkansas, is so imminently dangerous to the traveling public that its builder should be liable in a case like this one.

The other defect in the appellant's argument is the absence of proximate cause. The pavement on Mulberry is 31 feet wide, nine feet more than the required minimum of 22 feet. A plaintiff's expert witness thought it should be at least 35 feet wide, to include two 11-foot lanes and a parking lane. The sharpness of the curve is not explained, except that it did not conform to the city's minimum 7,160-foot radii for curves.

At 8:30 a.m. Borchert was driving home on Mulberry, as he had done for months. He crossed the center line to get around a parked car and had not gotten back into his lane when the collision occurred. He "just didn't see" Milam approaching on his motorcycle, which "barely caught the left front fender of my vehicle." Milam was on his side of the street, about ten feet from the curb. Borchert's testimony is not disputed, as Milam's version of the matter was not submitted.

Proximate cause is "a cause which, in a natural and continuous sequence, produces damage and without which the damage would not have occurred." AMI Civil 2d, 501 (1974). The collision could, on the proof, have been avoided

by either man if he had been attentive. The collision cannot reasonably be said to have followed in a natural and continuous sequence from the construction of the street four years earlier. Moreover, a proximate cause is one without which the damage would not otherwise have occurred. Since Milam's motorcycle barely caught the fender of the oncoming car when he had ten feet of clearance to his right, it would be pure speculation for a jury to say the accident would not have happened had the street been four feet wider. Such collisions occur daily on streets that are straight and wide.

Affirmed.

PURTLE and HOLLINGSWORTH, JJ., dissent.

P. A. HOLLINGSWORTH, Justice, dissenting. I disagree with the majority on the negligence issue in this case.

Mulberry Street was built by Midland and dedicated to the public on November 14, 1977. The subdivision in which the street was located was incorporated into the city of Pine Bluff on January 11, 1979. Prior to the incorporation, the Pine Bluff City Council had adopted recommendations that the pavement width of two-lane collector streets, such as Mulberry, be forty-eight feet and that the minimum curve radii of such streets be 7160 feet. Other city ordinances required clearing and grading of street rights-of-way. It is undisputed that Mulberry Street is thirty-one feet wide, and the radius of the curve is substantially less than the standard adopted by the city council.

The appellant asserts that the trial court erred in granting summary judgment on the issue of negligence. I agree. To prove negligence, the injured party must prove a negligent act; that the act was the proximate cause of the plaintiff's damages; and that the damages were foreseeable. *St. Mary's Hospital, Inc.* v. *Bynum*, 246 Ark. 691, 573 S.W.2d 914 (1978). The appellees argue that they owed no legal duty to the appellant and that without a duty, there can be no negligent act. The appellees also argue that Midland could be viewed as a contractor in relation to the city and that the

general rule in Arkansas provides that upon acceptance by a proprietor of its contractor's work, the liability of the contractor as to third persons ceases. *Southwestern Bell Co. v. Travelers Indemnity Co.,* 252 Ark. 400, 479 S.W.2d 232 (1972). There are, however, exceptions to this general rule under which a contractor may be held liable after acceptance and approval of the completed job. One of the exceptions "is where the job is 'turned over by the contractor in a manner so negligently defective as to be imminently dangerous to third persons'." *Reynolds* v. *Manley,* 223 Ark. 314, 265 S.W.2d 714 (1954). *Reynolds* involved a suit against a contractor for negligently constructing a road. In holding that the condition was not so imminently dangerous as to subject the contractor to liability, the court pointed out that there was no contention that the hole in the road existed when the job was completed and that the State selected and approved all materials used. These facts make *Reynolds* distinguishable from the case at bar, in that here the contention *is* that the road was defective at the time the job was completed. The defect concerns the dimensions of the road, and since the city did not supervise the project, there can be no claim that the city controlled the manner and specifications for construction. Therefore, I would find that the question of negligence should not have been resolved upon a motion for summary judgment. I would remand to the trial court to allow the parties to develop fully the questions of causation and defective conditions on the iosue of negligence.

PURTLE, J., joins in this dissent.