Clarence T. GANN *v.* Charlie PARKER and Shirley Parker

93-464                                                                865 S.W.2d 282

Supreme Court of Arkansas
Opinion delivered November 15, 1993

108

*Lohnes T. Tiner*, for appellant.

*Barrett & Deacon*, by: *David W. Cahoon*, for appellees.

ROBERT H. DUDLEY, Justice. Appellant Clarence Gann, an employee of a butane gas distributor, was called to the home of appellees, Charlie and Shirley Parker, to inspect for gas leaks. While there Gann found a leak in the Parkers' gas stove. He removed the stove from between some counters and, while attempting to seal the leak, came in contact with an overhead electrical ventilator. When he touched the ventilator he received a severe electrical shock and suffered physical and emotional injuries. Gann

sued the Parkers, the possessors of the home. The trial court granted summary judgement for the Parkers. We affirm.

Depositions and affidavits were submitted below, but are abstracted on appeal only by appellees. They show that Franklin and Inez Jewell built the house about twenty-five years ago, and, at that time, Franklin Jewell personally installed the ventilator inside a cabinet that is above the stove. The appliance, labeled a vent-a-hood, is a metal hood containing an electric light and an exhaust fan. It is necessary to remove two or three cover plates to see the switches and wiring inside the appliance. About seven or eight years ago the Jewells had the vent-a-hood taken out and recovered with chrome. The abstract does not reveal whether the appliance was rewired at that time, or who reinstalled it. By the time of Gann's injury, the Parkers, the Jewells' daughter and son-in-law, possessed the house. The abstract does not reveal how long they had been in possession of the house, or whether they had purchased it, but Shirley Parker, the Jewells' daughter, had been in and about her parents' house since it was built. There was no evidence of any incident before Gann's injury that would cause the possessor of the home to know that the vent-a-hood might be dangerous. There was no evidence that anyone had ever been shocked by touching the appliance, or that the fan or lights flickered. Inez Jewell stated that in the twenty-five years the vent-a-hood was in place, it neither shocked her, nor caused the fan to sputter, nor caused a light bulb to flicker, except when a light bulb burned out. Appellee Shirley Parker stated she used the appliance every day and never observed anything unusual.

Joey Jewell, Shirley Parker's brother, stated that after Gann was injured, he took the vent-a-hood out of the cabinet, removed two or three cover plates from the exterior of the appliance and found two wires inside. One wire had a naked spot on it and another was frayed and had deteriorated to the point that it had become stuck to a metal part of the ventilator. He opined that the one wire became stuck to the metal because it had gotten very hot.

Gann admitted that when he was in the Parkers' home to repair the stove, he did not notice anything unusual about the vent-a-hood. He did not see anything that would indicate an electrical problem. He did not see any frayed wiring or anything of that nature. He stated that he touched the vent-a-hood several times before he was shocked.

Gann's case rests entirely on the affidavit of an electrician who stated that the wiring was inadequate, that the appliance was not properly grounded, and that the appliance was not directly connected to its own circuit breaker, but appeared to be tapped into another circuit in the wall. He stated that the wiring into the vent-a-hood lacked a Romex connector, thus exposing the wire to the sharp edges of the appliance's metal frame, and the wires to the appliance were pinched by wooden shelving.

The possessors of the home, as the movants for summary judgment, bore the burden of showing that there was no issue of material fact. *Gleghorn* v. *Ford Motor Credit Co.*, 293 Ark. 289, 737 S.W.2d 451 (1987). In reviewing the grant of summary judgment, we must view the evidence in the light most favorable to appellant Gann, as he is the party resisting the motion and is entitled to have all doubts and inferences resolved in his favor. *Ford* v. *Cunningham*, 291 Ark. 56, 722 S.W.2d 567 (1987). However, it is appropriate to sustain a grant of summary judgment if the record before the trial court, as abstracted, "showed there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Tullock* v. *Eck*, 311 Ark. 564, 567, 845 S.W.2d 517, 519 (1993).

It is undisputed that Gann entered the house to find and seal a gas leak at the request of the possessors of the home. Consequently, he was a business invitee, and the possessors had a duty to use ordinary care to protect him from harm. *Kay* v. *Kay*, 306 Ark. 322, 812 S.W.2d 685 (1991). To recover from the failure of a possessor of a home to use ordinary care, the business invitee had to show (1) that the premises were defective, (2) that the possessor created the defect, or that the defect was apparent, or by the exercise of ordinary care should have been apparent, so that a reasonably prudent possessor would correct the defect or warn the invitee of it, and (3) that the defect caused the injury. It is undisputed that the premises in this case were defective, but there was no evidence to show that the possessors created the defect. Consequently, the initial question is whether the defect was so apparent that, through the use of ordinary care, the possessors should have discovered and corrected it. Ordinary care means that a homeowner must protect an invitee from dangers that could have been, or reasonably should have been, foreseen. *First Elec. Coop. Corp.* v. *Pinson*, 277 Ark. 424, 642 S.W.2d 301 (1982). There was

no showing that by the use of ordinary care a reasonably prudent possessor would have discovered the defects inside the appliance. The wire that melted onto the metal was inside the appliance and could be seen only by removing the cover plates. There was no showing of prior notice of the defect either by shock, by flickering of the electric light, or by sputtering of the fan. The defect inside the appliance simply was not apparent to the possessors of the home, and, as a result, there was no genuine issue of material fact about the possessors' lack of negligence in failing to cure the defect or in failing to warn the invitee of it.

The electrician stated that the wiring was inadequate and that the appliance was not properly grounded, was not connected to its own circuit breaker, and lacked a Romex connector. However, there is nothing in his statement, as abstracted by appellees, to imply that any of the above defects were or should have been apparent, upon the exercise of ordinary care, to the possessors of the home. Again, there is no genuine issue of material fact about the possessors' lack of negligence in their failing to cure these defects or in failing to warn the invitee of them. Further, there was no showing which, if any, of these defects was the proximate cause of the injury.

Appellant argues that we should reverse this case because in *Scully* v. *Middleton*, 295 Ark. 603, 605, 751 S.W.2d 5, 6 (1988), we said one who supplies a defective electrical outlet can be held liable for any injuries it might cause. The quotation is appropriate for the facts of that case, but not to the facts of this case. In both cases the appliance was defective, but in this case the possessors were not aware the appliance was defective.

Additionally, appellant quotes language from *Southwestern Gas & Electric Co.* v. *Bianchi*, 198 Ark. 996, 132 S.W.2d 375 (1939), and argues that we should hold that the possessors had constructive knowledge of the defect in the appliance. The cited case holds that persons of ordinary intelligence are presumed to know of the dangerous properties of electricity. *Id.* at 1000, 132 S.W.2d at 377. It does not hold that persons of ordinary intelligence are presumed to know of hidden defects in appliances. The possessor of a home is not an absolute insurer of the premises.

Appellant Gann alternatively argues that the grant of summary judgment was in error because the doctrine of *res ipsa*

*loquitur*, or "the thing speaks for itself" doctrine, should have been applied to create an inference of negligence. The argument is without merit. We have said that we will not apply the doctrine unless the event is the kind which ordinarily does not occur in the absence of negligence, and all other responsible causes, such as the conduct of the plaintiff or third persons are sufficiently eliminated. *Coca-Cola Bottling Co.* v. *Hicks*, 215 Ark. 803, 223 S.W.2d 762 (1949). Here, the defective wiring was initially installed by the former owner and was later reinstalled by some unknown third party. At the time of the injury, Gann, and not the possessors of the home, was in direct control of the appliance. Those two factors could eliminate the application of the doctrine, but we decline to apply the doctrine in this case because this type of event could easily occur in the absence of negligence on the part of the possessor of a home. Thus, the thing does not speak for itself. The trial court did not err in granting summary judgment for appellees.

Affirmed.