Clay JACKSON et al *v.* PETIT JEAN ELECTRIC CO-OP

80-112                                      606 S.W. 2d 66

*Supreme Court of Arkansas*
Opinion delivered September 29, 1980
Rehearing denied November 3, 1980

*Brazil & Roberts*, and *Chester C. Lowe, Jr.*, for petitioner.

*Wright, Lindsey & Jennings*, for respondent.

RICHARD L. MAYS, Justice. We granted certiorari to consider the question of tort liability of an employer to employees of an independent contractor.

Respondent, Petit Jean Electric Cooperative Corporation, entered into a construction contract in June, 1973 with Johnson Construction Company, an independent contractor, to rebuild new transmission and distribution lines of its electric transmission system. In January, 1979, Clay Jackson, an employee of Johnson Construction Company and a petitioner herein, was seriously injured when his body came into contact with a hot wire while working on respondent's energized lines. Jackson recovered under the workers' compensation act from Johnson Construction Company's worker's compensation insurance carrier, Seaboard Fire and Marine Insurance Company, also a petitioner herein, and sought to recover for the same injuries by filing a civil action against Petit Jean on the theory of negligence and strict liability.

Jackson alleged that Petit Jean not only breached its common law duty of due care but breached the duty of care which it affirmatively assumed toward employees of Johnson Construction Company under the construction contract. Further Jackson alleged in an amended complaint that even if Petit Jean were not negligent, Petit Jean should be liable for physical harm caused by the negligence of Johnson Construction Company, since the work it entrusted to Johnson Construction Company was inherently dangerous. In response to Petit Jean's motion for summary judgment, after Seaboard Fire and Marine Insurance Company intervened, the trial judge dismissed the action, finding no genuine issue of material fact regarding Petit Jean's liability. On review by the Court of Appeals, the judgment was affirmed.

It is generally recognized that an employer of an independent contractor owes a common law duty to the contractor's employees to exercise ordinary care for their safety and to warn against any hidden dangers or unusually hazardous conditions. See *Gordon* v. *Matson*, 246 Ark. 533, 439 S.W. 2nd 627 (1969). Relying upon this general principle, Jackson

alleges that Petit Jean breached its duty by failing to insulate or isolate its hot wires and failing to de-energize its lines during the work hours of the independent contractor. Under the facts that are entirely without dispute, and giving Jackson the benefit of every contested fact and all favorable inferences, we find no basis in the record for imposing any duty upon Petit Jean to isolate or de-energize its lines or to warn employees of an electrical contractor that the work as contracted for would be dangerous if not done properly. Certainly, it cannot be seriously contended that Petit Jean should isolate lines from the employees of an electrical contractor whose compensation and contractual obligations expressly contemplate working around energized lines. The duty of an employer of an independent contractor to use ordinary care or to warn of latent dangers does not comtemplate a duty to warn of obvious hazards which are an integral part of the work the contractor was hired to perform.

Petitioners also allege that Petit Jean had a duty to require Johnson Construction Company to provide sufficient safety devices and proper supervision for its employees. Petitioners predicate such a duty upon language in the construction contract which reserved for Petit Jean the right to alter the size of the work force and the quality and type of tools and equipment used on the job, as well as the right to inspect and approve the work. Such language does not impose any special duties upon Petit Jean for the safety and well being of Johnson Construction Company's employees. See, *Akins* v. *Okla. Gas & Electric*, 433 F. Supp. 1345 (W.D. Ark. 1977). Petitioners concede that Johnson Construction Company was an independent contractor, as opposed to a servant of Petit Jean, and the record clearly establishes that Petit Jean did not exercise any supervision or control over the manner and actual details of the work. Since Petit Jean neither promised nor undertook to supervise Johnson Construction Company's performance, Petit Jean owed no contractual duties to Johnson Construction Company's employees.

It is also argued that Petit Jean should be liable to Jackson because it negligently selected an incompetent contractor to perform inherently dangerous work. Assuming,

without deciding, that Petit Jean owed a duty to Jackson to select a competent contractor, we find inadequate facts in the record to raise a material issue of negligent selection. Although Johnson Construction Company has limited experience in high-voltage electrical work, its superintendent, with whom Petit Jean was familiar, possessed substantial electrical experience. The record contains no evidence that Petit Jean had any reason to believe that Johnson Construction Company was incapable of adequate performance at the time the contract was entered into.

Finally, irrespective of any negligence on the part of Petit Jean, petitioners contend that the negligence of Johnson Construction Company should be imputed to Petit Jean because of the inherently dangerous nature of the work. Although the general rule is that an employer is not responsible for the negligence of his independent contractor, petitioners rely upon a well-recognized exception which extends liability when the work which the employer delegates to an independent contractor is inherently dangerous. *Southwestern Bell Telephone Co.* v. *Smith*, 220 Ark. 223, 247 S.W. 2nd 16 (1952). The exception is grounded in a recognition that the possibility of harm to others is so great when the work activity is inherently dangerous that the law tolerates it only on terms of insuring the public against injury. We impose vicarious liability under these circumstances to insure that the public has legal access to a financially responsible party. The exception was obviously intended to protect those who have no direct involvement with the hazardous activity, are only incidentally exposed to its risks and have no direct means of insuring themselves against loss. Since employees of an independent contractor are directly involved in the hazardous activity, have knowledge of the risks and are insured against injury by worker's compensation, we perceive no sound justification for expanding the exception to include persons it surely was not designed to protect. See *e.g. Corban* v. *Skelly Oil Co.*, 256 F. 2nd 775 (5th Cir. 1958) (applying Arkansas law), and *Morris* v. *City of Soldotna*, 553 P. 2nd 474 (Alaska 1976).

Affirmed.

PURTLE, J. dissents.

JOHN I. PURTLE, Justice, dissenting. In my opinion, the facts of this case are adequately stated in the majority opinion. This dissent is based upon the contract between respondent and the independent contractor, Johnson Construction Company. The owner-respondent specifically reserved the right to control the number of employees doing the work for Johnson. It also retained control over the quality and type of equipment to be used on the job. Additionally, it reserved the right to inspect and approve, as well as to effectually supervise, the working conditions of Johnson's employees.

The complaint alleged respondent was negligent in failing to require the independent contractor to provide adequate tools and equipment, sufficient safety devices, and proper supervision of the employees of Johnson. The above duties and responsibilities were reserved to the respondent in the written contract. The complaint further alleged that the respondent was engaged in an inherently dangerous type of work which by common law required the respondent to exer- a high degree of care regardless of the contract between it and Johnson.

The judgment in the trial court did not contain findings of fact and conclusions of law. Apparently, the judgment was entered upon the theory that an employee of an independent contractor could not sue the owner. This simply is not the law as I understand it. An owner or prime contractor may be liable to an employee of a subcontractor or independent contractor when the prime contractor or owner is guilty of negligence by failure to use ordinary care or to warn the employees of unusually hazardous conditions which might affect the employees' safety. *Aluminum Ore Company* v. *George*, 208 Ark. 419, 186 S.W. 2d 656 (1945).

Certainly, the complaint, with all reasonable inferences deducible therefrom, stated a cause of action. After the interrogatories and testimony, I do not feel that all such inferences were removed. The trial court must review the record, on motion for summary judgment, in the light most favorable to the party opposing the motion, and all doubts

are resolved against the moving party. *New Hampshire Ins. Co. v. Quilantan*, 263 Ark. 892, 569 S.W. 2d 102 (1978).

In my opinion, the owner reserved the right to completely control the performance of the work and, in doing so, placed itself in a position of being responsible for its negligence which may not have been true in the absence of these provisions of the contract.

It appears to me the facts could be interpreted to reveal the respondent simply placed the independent contractor in a position to insulate itself against the exact type of negligence and disability claimed by the petitioner. In other words, it attempted to contract away its negligence and common law duty to the petitioner. It was the respondent who actually directed the work and controlled the conditions and equipment which were being used at the time the petitioner was injured. It was not the independent contractor's negligence which caused the injuries of petitioner, or at least the jury may have so found. I think the respondent was the prime contractor on this project and certainly would be responsible for acts of negligence or failure to perform duties which it owed to petitioner.

Without prolonging this dissent, I will simply state that I believe there remained a genuine issue of fact which should have been left to the jury to decide.