Hilda WILLIAMS, Special Administratrix *v.*
NUCOR-YAMATO STEEL COMPANY et al.

93-1365                                                    886 S.W.2d 586

Supreme Court of Arkansas
Opinion delivered October 31, 1994

*Daniel G. Ritchey*, for appellant.

*Reid, Burge, Prevallet & Coleman*, by: *Robert L. Coleman*, for appellee.

DAVID NEWBERN, Justice. In this wrongful death case, a summary judgment was entered in favor of the defendant, now appellee, Nucor-Yamato Steel Company (Nucor). The decedent, Dearl Dean Williams, was an employee of Cache Valley Electric Company (Cache). Cache had been hired to do electrical work in the construction of a Nucor mill. Mr. Williams died from electrocution as he was attempting, with other Cache employees, to ground a fence surrounding an electrical substation at the mill. A copper wire held by Mr. Williams accidentally touched a feeder lug energized with 34,500 volts.

Hilda Williams, the appellant, brought the wrongful death action as Mr. Williams's personal representative, making a number of specific allegations which may be summarized to say that Nucor failed in its duty to supervise, warn of danger, implement

safety precautions, and use ordinary care. Based on an affidavit and discovery responses, the Trial Court concluded summary judgment should be granted in Nucor's favor because, in its contract with Cache, Nucor retained no control over the work or authority to supervise the employees doing it. We affirm the judgment.

The contract between Nucor and Cache obligated Cache to construct the electrical substation. It provided that Cache was to provide "all of the labor, equipment, and supervision necessary to perform all the work required," and that Cache would be responsible for "qualified supervision and necessary craftsmen." Cache was to take "all reasonable precautions for the safety of all employees on the work." It gave Nucor the right to establish priorities for the work and stated that Cache would "commence work so as to complete the individual phases of the project" as outlined by Nucor.

An affidavit of Nucor's construction manager stated he depended on Cache to perform the work and see that safety measures were followed without supervision or interference from Nucor and that Nucor did not have any supervisory responsibility for the details of the work nor did it exercise or attempt to exercise any such control.

Depositions of Mr. Williams's fellow journeyman electricians were to the effect that they were supervised by Cache supervisors and that they had been warned that the substation had been energized and to be very careful while working around it on the day Mr. Williams died. One worker said, in his deposition, that Nucor personnel were present at the site, there was a great deal of pressure being put on Cache by Nucor to hurry the project, and the pressure was passed on to the workers by Cache supervisors. He did not say, however, that Nucor personnel supervised or controlled the work. He said the supervision came from Cache personnel.

■ When an owner or general contractor has hired an independent contractor to perform work, as in this case, the rule is that the general contractor or owner has

> a duty to exercise ordinary care and to warn in the event there are any unusually hazardous conditions existing which

might affect the welfare of the employees. The recognized exception occurs if the prime contractor [or owner] has undertaken to perform certain duties or activities and negligently fails to perform them thereafter or performs them in a negligent manner. *Aluminum Ore Co.* v. *George*, 208 Ark. 419, 186 S.W.2d 656 [(1945)].

*Gordon* v. *Matson*, 246 Ark. 533, 439 S.W.2d 627 (1969).

■ When, as in this case, there is no demonstration of an exercise of actual control or violation of the duty to warn by the one engaging an independent contractor to perform work, we have turned to the contract to see if the prime contractor or owner retained the right of control or supervision and thus assumed an additional duty or care toward employees doing the work. When there is no such right retained in the contract, we affirm a summary judgment entered in favor of the owner or prime contractor. *Davis* v. *Lingle Corp.*, 277 Ark. 303, 641 S.W.2d 27 (1982); *Gordon* v. *Matson, supra.*

The primary citation offered by Ms. Williams is our recent decision in *Elkins* v. *Arkla, Inc.*, 312 Ark. 280, 849 S.W.2d 489 (1993). Arkla hired Daniel Utility Construction Co. (Daniel) to lay pipe. A Daniel employee was asphyxiated when a trench in which he was working caved in. We reversed a summary judgment the Trial Court had awarded in Arkla's favor because we found the contract between Arkla and Daniel left a genuine issue of material fact concerning the degree to which Arkla had retained the right of supervision of Daniel employees working on the project.

■ In the *Elkins* case we quoted general authority from Restatement (Second) of Torts § 414 (1965), which is consistent with the cases cited above, to the effect that the entrusting of work to an independent contractor does not remove the duty of reasonable care from one who retains control of any part of the work. We noted particularly Comment c.

In order for the rule stated in this Section to apply, the employer must have retained at least some degree of control over the manner in which the work is done. It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress or to receive

reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations. Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, or as to operative detail. There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way.

We pointed out several sections in the contract between Arkla and Daniel which indicated some control was retained by Arkla including a rather direct statement in the contract that Arkla's engineer or inspector was to "have general supervision and direction of the work." There are no such provisions in the contract between Nucor and Cache. Rather, the contract appears to have been drafted carefully to assure that all control and supervision other than priorities of projects remained with Cache and not with Nucor.

Although we review summary judgment awards considering all proof in the light most favorable to the non-moving party, we do not reverse if there appears to be no remaining genuine issue of fact and if the moving party is entitled to judgment as a matter of law. Ark. R. Civ. P. 56(c); *Green* v. *National Health Laboratories, Inc.*, 316 Ark. 5, 870 S.W.2d 707 (1994). In this case, the summary judgment was proper.

Affirmed.