ROBERT J. GLADWIN, Chief Judge | Appellant Robert Duran appeals the June 25, 2015 order of summary judgment entered by the Miller County Circuit Court in favor of appellee Southwest Arkansas Electric Cooperative (SWAEC). He argues that the circuit court erred by granting summary judgment in favor of SWAEC because there was a duty of care owed to Duran and that material questions of fact remained as to whether that duty was breached. We hold that SWAEC owed no duty of care to Duran; accordingly, we affirm. I. Facts and Procedural History At the time of the incident, Duran was employed as a heavy-equipment operator for Charles Glover, Jr., d/b/a Charles Glover Trenching & Backhoe (Glover). SWAEC was responsible for providing electrical services to a residence in Miller County that had been destroyed by a fire resulting from a lightning-strike.' SWAEC hired Glover to dig a trench | ¡from the residence to an energized pad-mounted electrical transformer (PMT). Gnce the trench was dug, the work order further required Glover to place PVC piping, used as a conduit, in the trench from the residence up to, under, and into the PMT, which was fully energized. Then, according to the work order, the final activity was for Glover to “pull” new nonenergized electrical lines the length of the conduit. All work performed by Glover for SWAEC, including that outlined above, was conducted pursuant to the terms of a Special Services Contract executed between the parties. . While installing the conduit, Duran came into contact with the energized PMT and suffered injuries. As a result of the injuries sustained,[1] Duran filed suit against SWAEC, alleging that it failed to exercise ordinary care for his safety and to warn against any unusually hazardous conditions. ' On November 13, 2014, SWAEC filed an answer to the first-amended complaint that had been filed on November 12, 2014, along with a third-party complaint against Glover. On November 19, 2014, Glover filed an answer to the first-amended complaint. SWAEC filed a motion for summary judgment against Duran, and ultimately filed a renewed motion for summary judgment on December 5, 2014,[2] asserting that because Duran was an employee of an independent contractor, it owed him no duty — either to 1 ^provide a reasonably safe work environment or to warn him of an obvious-hazard that was an integral- part of the.work. SWAEC cited the Special Services Contract it .signed with Glover, which - contained the following pertinent provisions: WHEREAS, Contractor [Glover] represents that it has sufficient experienced personnel and equipment to perform, and Owner [SWAEC] desires Contractor to perform, the special services described on Schedule # 1 attached to and made a part of this contract. [[Image here]] Contractor agrees to furnish all supervision, labor, tools, transportation, equipment, and materials necessary to complete the special services required by this contract. [[Image here]] It is understood and agreed that Contractor is an independent contractor, having control over the work done pursuant to- this contract, and has no .authority to- obligate Owner for any payment or benefit of any kind to any person or entity. Contractor agrees to follow standard and reasonable safety practices and procedures while doing the work required by this contract. Contractor agrees to install and maintain the necessary guards, barriers, and protective and warning devices at locations where work is being performed to prevent accidents involving personnel of Contractor, personnel of Owner, or the general public. On- March 2, 2015, Glover adopted SWAEC’s motion for summary judgment. On March 4, 2015, Duran filed a response maintaining that he was owed a common-law duty of care to exercise ordinary care for his safety and to warn against any unusually-hazardous conditions. SWAEC filed a reply brief on March 31, 2015. The circuit court held a hearing on May 7, 2015, after which it concluded that there were no material questions of fact remaining and that SWAEC was entitled to summary judgment in its favor because SWAEC owed no duty to provide Duran with a safe work environment or to warn him of the dangers of working near an energized transformer, |4where working near an energized transformer was an integral part of the work Duran’s employer was hired to perform, and where Duran was admittedly aware of the hazard at issue. An order was entered on June 25, 2015, consistent with the ruling, in which the circuit court also denied Duran’s motion to bifurcate trial and denied the cross-motions for summary judgment filed by third-party plaintiff SWAEC and third-party defendant Glover as moot. Finally, the circuit court dismissed SWAEC’s third-party complaint against Glover “on the grounds of mootness of the issues, lack of jurisdiction and non-justiciable nature of the issues as presented.” Duran filed a timely notice of appeal on July 15, 2015. II. Standard of Review The standard of review in cases in which summary judgment has been granted is well settled. Our court need only decide if the circuit court’s grant of summary judgment was appropriate based on whether the evidence presented by the moving party left a material question of fact unanswered Lloyd v. Pier W. Prop. Owners Ass’n, 2015 Ark. App. 487, 470 S.W.3d 293. The moving party always bears the burden of sustaining a motion for summary judgment. Id. All proof must be viewed in the light most favorable to the resisting party, and any doubts and inferences must be resolved against the moving party. Id. The moving party is entitled to summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Id. Once the moving party makes a prima facie showing that it is entitled to summary judgment, the opponent must meet proof with proof by showing a material issue of fact. Id. | ^Moreover, the issue of duty is always one for the trial court and not the jury. Young v. Gastro-Intestinal Center, Inc., 361 Ark. 209, 205 S.W.3d 741 (2005). If a court finds that no duty of care is owed, the negligence count is decided as a matter of law, and summary judgment is appropriate. Id. III. Grant of SWAEC’s Summary-Judgment Motion In order to prevail on a claim of negligence, the plaintiff must prove that the defendant owed a duty to the plaintiff, that the defendant breached that duty, and that the breach was the proximate cause of the plaintiffs damages. Branscumb v. Freeman, 360 Ark. 171, 200 S.W.3d 411 (2004); see also Lloyd, supra. The circuit court correctly noted that the general rule is that a party does not have a duty to provide a reasonably safe work environment for the employees of its independent contractor. Stoltze v. Ark. Valley Elec. Coop. Corp., 354 Ark. 601, 127 S.W.3d 466 (2003). On the issue of an employer’s liability to an employee of an independent contractor, Arkansas has adopted the Restatement (Second) of Torts: One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care. Restatement (Second) of Torts § 414 (1965). See also Elkins v. Arkla, Inc., 312 Ark. 280, 849 S.W.2d 489 (1993) (holding that even though the owner of a construction project hires an independent contractor, the owner may retain the right and duty to supervise to such extent that it becomes responsible for injury resulting from negligence in the performance of work). In order for section 414 to apply, the employer must-have retained at least some lfidegree of control over the manner in which the work is done. See Restatement (Second) of Torts, § 414, Comment e, which states: It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed,-or to prescribe alterations and deviations. Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, or as to operative detail. There must be such a retention of a right of or supervision .that the contractor is not entirely free to do.the work-in his own way. Where: there is no demonstration of an exercise of actual control or violation of the duty to warn by the entity or individual-engaging an independent contractor to perform work, appellate courts will look to the contract to see if the prime contractor or owner retained the -right of control or supervision and'thereby assumed an additional duty of care toward employees doing the work. See Stoltze, 354 Ark. at 621,127 S.W.3d at 473 (citing Williams v. Nucor-Yamato Steel Co., 318 Ark. 452, 455, 886 S.W.2d 586, 587 (1994)). When there is no such right retained in the contract, appellate courts will affirm a summary judgment entered -in favor of the owner or prime contractor. Id. In this case, the Special Services Contract specifically stated that Glover was “an independent contractor, having control over the work done pursuant to this contract.” Because SWAEC retained no right to control the work, we hold that it did not -assume any additional duty of care toward Glover’s employees, here Duran, who were doing the work. We next look to' any other duty SWAEC might have owed Duran. It is generally recognized that an employer of an independent contractor does owe a common-law duty to the independent contractor’s employees to; exercise ordinary care for their safety, which is basically a'duty to warn against any hidden dangers or unusually hazardous conditions. Jackson v. Petit Jean Elec. Co-op., 270 Ark. 506, 606 S.W.2d 66 (1980).. See also Gordon v. Matson, 246 Ark. 533, 439 S.W.2d .627 (1969) (stating the. general rule that the responsibilities of the contractor to employees of the «subcontractor on the job are comparable to the duties of the owner of the premises, including a duty to exercise ordinary care and to warn in the event there are any unusually hazardous conditions existing which might affect the welfare of the subcontractor’s employees). In D.B. Griffin Warehouse, Inc. v. Sanders, 349 Ark. 94, 76 S.W.3d 254 (2002), our supreme court held, however, that this duty of an employer of an independent contractor to use ordinary care and to warn of .hidden dangers or unusually hazardous conditions does not contemplate a duty to warn of obvious hazards that are an integral part of the work the independent contractor was hired to perform. But the “obvious-danger” limitation does not bar recovery when the independent contractor is forced, as a practical matter, to encounter a known or obvious risk in order to perform his job. See Culhane v. Oxford Ridge, LLC, 2009 Ark. App. 734, 362 S.W.3d 325. In Griffin, supra, a warehouse owner hired an independent contractor to paint the roof. The independent contractor’s employee was killed when he fell through a skylight on the roof while performing the job. The supreme court reversed a jury verdict in favor of the employee’s estate, holding that the warehouse had no duty to warn the independent contractor about the dangers posed by the warehouse’s skylights because the employee had previously informed other coworkers not to step on the skylights, and the danger posed by the skylights was obvious and apparent. Id., 349 Ark. at 106, 76 S.W.3d at 262. lain Jackson, supra, Petit Jean Electric Cooperative hired Johnson Construction Company as an independent contractor to rebuild electrical transmission lines. Johnson’s employee, Clay Jackson, was injured when he came into contact with energized lines. Jackson filed a negligence claim against Petit 'Jean, but the circuit court entered summary judgment in Petit Jean’s favor, finding that Petit Jean owed Jackson no duty to warn about the obvious and inherent danger of working around live electrical lines. Our supreme court affirmed, writing that it could find no basis in the record for imposing any duty upon Petit Jean to ... warn employees .of an electrical contractor that the work as contracted for would be darigerous if not done properly. Certainly, it cannot be seriously contended that Petit Jean should isolate lines from the employees of an electrical contractor whose compensation and contractual obligations expressly contemplate working around energized lines. The duty of an employer of [an] independent contractor to use .ordinary care or to warn of latent dangers does not contemplate a duty to warn of obvious hazards which are an integral part of the work the contractor was hired to perform. Jackson, 270 Ark. at 509, 606 S.W.2d at 68. Here, Duran argues that SWAEC owed him a duty to warn him against any unusually hazardous conditions. But, as noted-above, this duty does not contemplate a duty to warn of obvious hazards that are an integral part of the work the independent contractor was hired to perform. Griffin, supra. We hold that in this case, the PMT was an obvious hazard that was an integral part of the work Glover was hired to perform; accordingly, SWAEC owed no duty to warn Duran. Duran admitted in his deposition that he had been told not to touch the wires in the PMT. He likewise acknowledged that he “heard the transformer humming, so [he] knew .... it was energized.” He stated that he understood that it was high voltage. He admitted | athat he had worked on PMTs ■ before and had been trained by people who were more experienced than he was. He explained that in his previous experiences with PMTs, he could tell they were energized because they were humming. On the day he was injured, he-said that the box was “humming louder than I have ever heard it.” Charles Glover’s- daughter, April, told Duran not to touch anything in the PMT; moreover, Charles Glover testified in his deposition that Duran was aware that the PMT had a high-voltage end, that “you are never supposed to be around that end” of the PMT, and that he told Duran not to touch anything attached to the transformer. From the various deposition testimony, it is clear that the hazards of working near an energized PMT were known to. Glover and expressed to Duran. The Special Services Contract between SWAEC and Glover called for Glover to not only dig the trench and install the PVC conduit, but also to run the nonenergized electrical lines the length of the conduit wiring, the pedestal, and the transformer pad in preparation for their connection. These specifically listed activities' necessarily involved close proximity to the PMT. Therefore, the obvious hazards were an integral part of the work the contractor was hired to perform. Under these circumstances, SWAEC had no duty to warn of obvious hazards that were an integral part of the work the contractor was hired to perform. See Jackson, supra. Duran nonetheless argues that the work he was required to perform entailed an unusually hazardous condition, which SWAEC should have had a duty to warn him about, as discussed in Culhane, supra. We ' disagree. In Henderson v. Tyson Foods, Inc., 2015 Ark. App. 542, 473 S.W.3d 52, this court rejected a. similar argument where the employee of an independent contractor was injured while cleaning Tyson’s poultry-processing machinery. Jj^The court determined that because the employee’s job was to clean that type of machinery, Tyson’s duty to warn of latent dangers, did not contemplate a duty to warn of obvious hazards that were an integral part of the work the independent contractor was hired to perform. Henderson, 2015 Ark. App. 542, at 11 — 12, 473 S.W.3d at 59. Likewise, here, the job that Duran was hired to perform involved an obvious hazard, specifically, working around a PMT, and Duran specifically admitted that he was well aware of the hazard. Accordingly, SWAEC had no duty to warn about that obvious hazard. We hold that the circuit court correctly applied the law to find that under these circumstances, SWAEC did not owe a duty to Duran to provide him with a safe work environment or to warn him about the specific dangers of working near an energized PMT. Becausé the circuit court correctly concluded that no duty was owed, the circuit court correctly entered summary judgment in SWAEC’s favor. See Henderson, supra. Accordingly, we affirm. ' : Affirmed. Whiteaker, Hoofmari, and Brown, JJ., agree. •• Harrison and Kinard, JJ., dissent. . Duran recovered workers’ compensation benefits for his injury; this appeal addresses whether Duran may go beyond those benefits to also recover in tort from the electric company that hired Duran's employer to perform the work at issue. . SWAEC also filed a third-party complaint against Glover, alleging indemnification pursuant to the Special Services Contract between those two parties. The third-party complaint is not in the addendum, but the circuit court dismissed it in its order granting SWÁEC’s summary-judgment motion.